

# NUMBER 13-11-00693-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ERICK SALINAS,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

### On appeal from the 275th District Court
### of Hidalgo County, Texas.

# CONCURRING AND DISSENTING MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes**
**Concurring and Dissenting Memorandum Opinion by Chief Justice Valdez**

I join the majority's opinion today insofar as it holds that the trial court was "collaterally estopped from relitigating whether Salinas had committed manslaughter or aggravated assault in the hearing to revoke community supervision" due to Erick Salinas's acquittal in trial court cause number CR-2137-10-E. However, I do not join the

remainder of the majority's opinion, which holds that the trial court did not abuse its discretion in revoking Salinas's community supervision, because my reading of the record supports a different conclusion. Accordingly, I concur, in part, and respectfully dissent, in part.

## I.    THE RECORD

The record shows that in March 2009, Salinas was placed on deferred adjudication with ten years community supervision for the offense of attempted capital murder. On March 24, 2010, while on community supervision, Salinas was involved in a fatal traffic accident on Tenth Street in McAllen, Texas. As a result of the collision, Lori Gonzalez tragically lost her life, while her husband, Jose de Jesus, and daughter, Adriana, sustained serious injuries. Following the crash, the State charged Salinas with manslaughter, *see* TEX. PENAL CODE ANN. § 19.04, aggravated assault, *see id.* § 22.02(a), and aggravated assault with a deadly weapon, *see id.* § 22.02(b).

On April 7, 2010, Hidalgo County Adult Probation Officer Suzy Ann Zuniga filed a memorandum of adjudication which alleged that Salinas: (1) was arrested for the manslaughter and aggravated assault offenses; (2) was in arrears $29.00 on supervisory fees and $197.00 in arrears for court costs; and (3) failed to complete his requisite 300 hours of community supervision.

In late May 2011, Salinas was tried in trial court cause number CR-2137-10-E for the alleged charges of manslaughter, aggravated assault, and aggravated assault with a deadly weapon in the trial court. During the jury's deliberations of these charges, the trial court heard the State's motion to adjudicate guilt related to trial court number CR-

2

3989-08-E for Salinas's 2009 attempted capital murder offense.[1]  At the hearing, the trial court took judicial notice of "everything that [it had] heard and seen" during the CR-2137-10-E trial.

The State then called Zuniga as its next witness.  Zuniga testified that she was Salinas's supervising officer related to his community supervision.  On cross-examination, Zuniga testified that Cause Number CR-2137-10-E was brought to her attention when she received a phone call about Salinas's arrest.  Zuniga indicated that the "standard procedure" after receiving that phone call is to file a motion to adjudicate guilt without any knowledge of actual guilt or innocence of the accused.  Zuniga testified that during the year after Salinas was placed on deferred adjudication until the March 24, 2010 incident, Salinas had made "significant changes" in his life, including attending full-time classes at a vocational school and mowing the grass at Anzalduas Park.

According to Zuniga, Salinas also successfully completed drug and alcohol treatment classes and did not violate any other terms or conditions of his community supervisions except for the three listed in the State's motion to adjudicate guilt.  Zuniga admitted that Salinas had been in arrears for court costs since June 2009 and had been short on his community service hours for three months prior to the State's filing of its motion for adjudication of guilt.  Zuniga testified that despite Salinas's non-compliance with these two conditions, no motion for adjudication of guilty had been filed.  Zuniga explained the reasoning for not filing such a motion, at that time, as follows:

> ZUNIGA:  Due to the fact that he was making an attempt to comply with the other court ordered conditions of supervision, that is not usually the

---

[1] The record shows that the trial court relocated the hearing to an auxiliary courtroom over concerns that the jury could hear the ongoing proceeding and that the parties could hear the jurors' deliberations.

procedure we take to submit Motions to Adjudicate based on three months of not complying with pending hours of community service.

Then, Salinas elicited the following admission from Zuniga below:

[DEFENSE COUNSEL]: Pretend the arrest didn't happen, or the accident that occurred didn't happen on March the 24th 2010. Would you have filed a Motion for Adjudication of Guilt against Erick Salinas in this case?

ZUNIGA: No.

At that point in the proceedings, both sides rested, and the trial court stated the following:

THE COURT: Okay. Let me have that, take the evidence into consideration, and I'll wait for the jury to make a decision, if they're going to make a decision on [. . .] CR-2137-10-E, the jury is still deliberating so we'll wait to hear from the jury.

When asked by the State whether the trial court wished for the parties to make closing arguments on CR-3989-08-E, the trial court responded by stating that it wanted to know the jury's verdict on CR-2137-10-E prior to hearing closing arguments on CR-3989-08-E. The jury eventually returned a verdict of not guilty on all three counts.

On June 30, 2011, the trial court heard closing arguments related to the motion to adjudicate guilt in CR-3989-08-E. In his closing, Salinas's counsel noted that the pre-sentencing investigation report cited an interview from Lori Gonzalez's widower, Jose Gonzalez, who stated that Salinas "should still be punished," or "be forced to pay the expenses that he still has." Salinas's counsel noted that Salinas had been incarcerated for fourteen months and that Salinas was "ready," with the help of his mother, to make payments of restitution totaling $135,000 to the Gonzalez family.

4

In its closing, the State made the following argument:

[THE STATE]: This Defendant was placed on deferred adjudication on March the 2nd 2009. And in that interim, Judge, he engaged in activity that led to Lori Gonzalez's death, and serious injuries to her husband and daughter. And it is the State's position, Judge, that he's been given an opportunity already. And to give him another opportunity at this point in time, Judge, would in a sense just be a slap in the face of the victim, Your Honor.

And also, I think it would to a certain extent, put the public at risk again.

Without explaining its decision, the trial court found Salinas guilty of attempted capital murder and assessed his punishment at forty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice.

## II. DISCUSSION

As the majority correctly articulates, our standard of review in these types of cases is limited to abuse of the trial court's discretion. *See Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). Under this standard, we do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006).

First, I must note the odd procedural history of this case. The trial court proceeded to hear the State's motion to adjudicate guilt while the jury was deliberating on CR-2137-10-E rather than waiting until the verdict was received. Further, the trial court suspended the hearing to wait for the verdict in CR-2137-10-E. This procedural history lends support to my conclusion that the trial court's decision to revoke Salinas's

5

community supervision rested solely on the manslaughter and aggravated assault offenses. At this point in the proceeding, assuming that the trial court had enough evidence to revoke Salinas's community supervision on the other two grounds, the trial court chose not to exercise its authority to do so and instead chose to wait for the verdict in CR-2137-10-E. I would hold that this procedural posture, by itself, was arbitrary and amounted to an abuse of discretion.

Next, while I have authored numerous opinions which hold that "one sufficient ground for revocation will support the court's order to revoke probation," *see Garcia v. State,* 387 S.W.3d 20, 26 (Tex. Crim. App. 2012), such a mechanical rule cannot apply to this unique record.

My review of the record shows the following substantive facts:

- Zuniga's undisputed testimony indicates that but for the March 24, 2010 arrest, her department would not have filed a motion to adjudicate guilt;

- Months had passed in which Salinas was in arrears for court costs and non-compliant with his community service requirement, and the State had not filed a motion to adjudicate guilt;

- Zuniga provided uncontroverted testimony that it was not the usual procedure in the Hidalgo County Adult Probation Department's to file motions to adjudicate guilt for community service violations;

- Salinas substantially complied with the conditions of community supervision, and according to Zuniga, Salinas was making progress;

- Salinas was incarcerated for fourteen months leading up to his trial on CR-2137-10-E, which further prevented him from going to school, completing community service hours, working, and/or paying his arrears;

- The State did not establish that Salinas had the means, but refused to pay his arrears;

- The jury acquitted Salinas of all charges in CR-2137-10-E;

6

- The State's sole argument during its closing argument at the CR-3989-08-E hearing, after Salinas's acquittal, centered on the death of Lori Gonzalez and the subsequent charges, which shows that the State sought to impermissibly relitigate the issues in CR-2137-10-E; and

- The Gonzalez family's wishes for Salinas's punishment and payment of restitution were included in the pre-sentence investigation.

Although the trial court does not explicitly state its reasoning for its ruling, based upon the procedural and substantive facts in this case, I conclude that the trial court's order on CR-3989-08-E was premised solely upon Salinas's actions on March 24, 2010 and the subsequent charges that stemmed from that event, and not upon his failure to pay court costs or non-compliance with the community-service condition.

I join the majority to hold that the trial court was collaterally estopped from relitigating CR-2137-10-E in light of Salinas's acquittal. *See Ex Parte Tarver*, 725 S.W.2d 195, 197 (Tex. Crim. App. 1986). Therefore, I conclude that the trial court abused its discretion in revoking his community supervision and adjudicating Salinas guilty in CR-3989-08-E solely on this ground.

At the very minimum, I would reverse the trial court's order adjudicating guilt and subsequent sentence on CR-3989-08-E and remand the entire proceeding for a new hearing.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
Tex. R. App. P. 47.2(b)

Delivered and filed the
24th day of October, 2013.

7